UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,           ) | |
|                                     ) | |
|     Plaintiff,  ) | |
|                                     ) | |
| v.                                  ) | Case No.: 4:20-cr-00607 AGF |
|                                     ) | |
| LYNESE CARGILL,                     ) | |
|                                     ) | |
|     Defendants. ) | |

**AMENDED SENTENCING MEMORANDUM**

COMES NOW Defendant Lynese Cargill, by and through counsel, and presents the following memorandum for the Court's consideration at sentencing.

**I. Introduction.** The Government has characterized this offense as a criminal scheme calling for a significant punishment, constituting a shocking an abuse of trust, combined with a large loss to the victim company. Lynese takes full responsibility for that harm. It is substantial. But based upon §3551 factors, Lynese asks for a below-guidelines sentence based upon her personal characteristics, a lack of a need to protect the public from further crimes, her swift acceptance of responsibility, and the substantial number of below-guidelines sentences in this district with similar defendants. Based on these and other factors, Lynese asks this court for a downward variance from the guideline range of 33 months to 41 months.

**II. Procedural Background**. On September 30, 2020, the Government filed an information charging Lynese with three counts of wire fraud in violation of 18 U.S.C. §1344. [Doc. Text 1]. Lynese pleaded guilty the same day [Doc. Text 4]. The Presentence Investigation Reports (PSR) returned an offense level of 20, and criminal history category of 1, resulting in a guideline calculation of 33 months to 41 months. PSR ¶ 81 [Doc. Text 18].

1

**III.    Lynese Asks for a Downward Variance.** The Court may consider the nature and circumstances of the offense in considering a downward variance, as well as Lynese's history and personal characteristics that provide insight and context that explains, but not justify, a serious offense like this one that has financially and emotionally harmed other people. 18 U.S.C. § 3553(a)(1). The Government has focused on certain circumstances of this offense, which include the substantial amount of time the offense continued, efforts to conceal her conduct, the substantial emotional and financial effect on the victim company and its employees, including her former business partner. [Doc. 20, p. 1].

This offense is a serious one. Lynese's former business partner, Denise Bentele, has provided this Court with a letter describing Lynese's conduct as emotionally gutwrenching, especially considering the amount of money involved over a ten-year period and their close personal relationship. As Lynese's letter (Exhibit A) explains, she knows and understands the extent of the pain she caused Denise and her former colleagues. For complex reasons Lynese has started to grasp after therapy, she was overwhelmed at the time of the offense with what she considered to be an enormous personal responsibility for the success of her company, while also providing for her family.  This reaction is explained by the unusual, suppressed, emotionally harmful events that happened to her as a young child.

As time passed beginning in 2008, through emotional dissociation and denial of the gravity of her conduct, she maintained what she has described as an inexplicable double life.  On the one hand, she appeared to be a PTA mom and successful businesswoman.  In reality, her personal and professional life was falling apart.  Due to that denial, fueled in part through excessive use of alcohol, the conduct continued.  Setting it apart from similar cases, Lynese's conduct does not show an intent or motive consisting of simple greed or personal enrichment that this Court often sees. While many of these transactions were for personal, nonessential expenses like gym memberships, clothing, and

cosmetics, the evidence would have also shown Lynese paid expenses like taxes and utility payments. Lynese bought groceries and paid for family health care costs. Lynese made credit card payments that largely accrued during a period of time when she and Denise founded the company, when she had very little personal income. These transactions were absolutely inexcusable, but also show that her conduct was motivated in part to provide for her family. The evidence the Government would have presented at a trial reflects over the relevant period of time, Lynese took about $65,000 each year from the company.

The Court should consider the nature and circumstances of the offense, not just as the Government describes it, but considering a context that reflects a diminished culpability. Lynese's unaddressed emotional problems prevented her from successfully coping with the aftershocks of her tumultuous childhood. The PSR in this case identified emotional trauma as a child due to abuse in her family that caused ripple effects through her time as a working mom with young children, juggling overwhelming personal responsibilities. While many people manage to cope with similar situations without retreating into alcohol and the overuse of prescription drugs like Xanax and avoid serious criminal conduct, Lynese asks the Court to consider these factors that caused her life to spiral out of control. [Doc. 18 ¶101].

Lynese's substantial personal and emotional growth—her vulnerability and humility, reflected in her letter to this Court—is notable. She is remarkably self-aware, even after a short amount of time and the assistance of a good therapist. That self-awareness of her personal tendencies toward extreme depression and anxiety, leading to conduct that gradually developed over time to an extreme degree, makes the possibility of a repeat crime of this nature, particularly at the age of 51, very unlikely. Once she woke up to the gravity of the damage, she swiftly confessed guilt to this Court, sparing the victim company the further emotional harm of a drawn-out proceeding. The Court may also consider that below-guidelines sentences are given in substantial number of similar cases. Sentencing data in similar

cases reflects that a substantial number of comparable defendants in this jurisdiction receive below-guidelines sentences. Sentencing data reflects in 2019, there were 15 defendants with the same guideline range and criminal history in this district. Of these, variances below guidelines were granted in 53 percent of cases. The average sentence in 2019 was 19 months, and the median 15 months.

### IV. Conclusion

Lynese asks this Court to consider a sentence substantially below guidelines in this case, or a sentence of probation with conditions this Court deems appropriate.

> Respectfully submitted,
>
> */s/ Jessica M. Hathaway*
>
> Gregory N. Wittner #43278MO
> Jessica M. Hathaway #49671MO
> Rosenblum, Schwartz & Fry
> Attorneys for Defendant
> 120 S. Central Avenue, Suite 130
> Clayton, Missouri 63105
> (314) 862-4332/Facsimile (314) 862-8050

**CERTIFICATE OF SERVICE**

I hereby certify that on, the foregoing was electronically filed with the Clerk of the Court and served by electronic mail upon Hal Goldsmith, Assistant United States Attorney.

4